# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WINTER WILDLANDS ALLIANCE, | Case No. 1:11-CV-586-REB |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | **AND ORDER** |
| U.S. FOREST SERVICE, | |
| Defendant, | |
| v. | |
| BLUERIBBON COALITION, INC., IDAHO STATE SNOWMOBILE ASSOCIATION, INC., and AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS, INC., | |
| Defendant-Intervenors. | |

Currently pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 40); Defendant's Cross-Motion for Summary Judgment (Dkt. 43), and Defendant-Intervenors' Cross-Motion for Summary Judgement (Dkt. 48). The parties have consented to the jurisdiction of a United States Magistrate Judge. *See* Dkt. 51. The Court has carefully reviewed the record, has heard and considered the oral arguments of counsel, and now enters the following Memorandum Decision and Order.

## INTRODUCTION

Plaintiff Winter Wildlands Alliance ("WWA") challenges Subpart C of the Forest Service's 2005 Travel Management Rule (sometimes referred to as the "2005 Rule"), found at 36

**MEMORANDUM DECISION AND ORDER - 1**

C.F.R. Part 212, Subpart C, and also challenges the Forest Service's denial of WWA's petition to amend and to remove Subpart C from the 2005 Travel Management Rule.  Complaint, Dkt. 1. Intervening in the case are the BlueRibbon Coalition, Inc., the Idaho State Snowmobile Association, Inc., and the American Council of Snowmobile Associations, Inc. (collectively, "Intervenors").  Dkts. 25, 31.

WWA contends that the 2005 Rule is contrary to law and that in enacting the 2005 Rule the Forest Service arbitrarily and capriciously exempted snowmobiles and other over-snow vehicles ("OSVs") from mandatory travel management planning, in violation of Executive Order 11644, as amended by Executive Order 11989, and the Administrative Procedure Act ("APA"). Additionally, WWA contends that the Forest Service's denial of its petition to amend the 2005 Rule was contrary to law, arbitrary and capricious.

## FACTUAL BACKGROUND

**A.     Forest Service Travel Management**

The federal law applicable to travel management in the National Forests derives from two sources.  First, there are two long-standing and related executive orders that apply to off-road vehicle travel on trails and other areas.  *See* Exec. Order No. 11644, 37 Fed. Reg. 2877 (Feb. 8, 1972) *as amended by* Exec. Order No. 11989, 42 Fed. Reg. 26,959 (May 24, 1977).  Second, the Forest Service has implemented its own travel management regulations, most recently revised in 2005.  *See* Travel Management; Designated Routes and Areas for Motor Vehicle Use (70 Fed. Reg. 68264 (2005)); 36 C.F.R. Parts 212, 251, 261, and 295 ("2005 Travel Management Rule").

**MEMORANDUM DECISION AND ORDER - 2**

1.      **Executive Orders**

     a.      **President Nixon's 1972 Executive Order No. 11644**

In 1972, President Richard M. Nixon issued Executive Order No. 11644 directing the

Forest Service and other federal land management agencies to "establish policies and provide for

procedures that will ensure that the use of off-road vehicles on public lands will be controlled

and directed so as to protect the resources of those lands, to promote the safety of all users of

those lands, and to minimize conflicts among the various uses of those lands."  Exec. Order No.

11644, § 1, 37 Fed. Reg. 2877 (Feb. 8, 1972).  The Order's preamble prescribes that a unified

national policy was needed for the widespread use of off-road vehicles[1] on public lands.  "Off-

road vehicle" is defined in the Executive Order as "*any motorized vehicle designed for or*

*capable of cross-country travel on or immediately over* land, water, sand, *snow*, ice, marsh,

swampland, or other natural terrain . . ."  *Id*. at § 2(3) (emphasis added).[2]

     Under Executive Order No. 11644, the Forest Service was required to "develop and issue

regulations and administrative instructions . . . to provide for the administrative designation of

the specific areas and trails on public lands" on which off-road vehicle use may be permitted and

areas where off-road vehicle use may not permitted.  *Id*. at § 3.  Further, the Forest Service was

required to "set a date by which such designation of *all* public lands all be completed."  *Id*.

---

[1]  Snowmobiles, along with other off-road vehicles, are specifically named in the preamble.

[2]  Exempted from the definition of off-road vehicle in the Executive Order are: "any registered motorboat; any fire, military, emergency or law enforcement vehicle when used for emergency purposes, and any combat or combat support vehicle when used for national defense purposes; and any vehicle whose use is expressly authorized by the respective agency head under a permit, lease, license, or contract."  Exec. Order § 11644, 37 Fed. Reg. 2877 (Feb. 8, 1972) *as amended by* Exec. Order 11989, 42 Fed. Reg. 26,959 (May 24, 1977).

**MEMORANDUM DECISION AND ORDER - 3**

(emphasis added).

Moreover, the regulations "shall direct that the designation of such areas and trails will be based upon (1) the protection of the resources of public lands, (2) promotion of the safety of all users of those lands, and (3) minimization of conflicts among the various uses of those lands." *Id*. Further, and importantly, such designations are to conform with the following specifically described "minimization criteria:"

> (1)  Areas and trails shall be located to minimize damage to soil, watershed, vegetation, or other resources of the public lands;
> (2)  Areas and trails shall be located to minimize harassment of wildlife or significant disruption of wildlife habitats;
> (3) Areas and trails shall be located to minimize conflicts between off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors; and
> (4) Areas and trails shall not be located in officially designated Wilderness Areas or Primitive Areas.  Areas and trails shall be located in areas of the National Park system, Natural Areas, or National Wildlife Refuges and Game Ranges only if the respective agency head determines that off-road vehicle use in such locations will not adversely affect their natural, aesthetic or scenic values. . .

*Id*.

### b.      President Carter's 1977 Executive Order No. 11989

In 1977, President Jimmy Carter added additional protections to President Nixon's prior order.  *See* Exec. Order No. 11989, 42 Fed. Reg. 26959 (May 24, 1977).  Executive Order 11989 required the Forest Service and other land management agencies to close certain trails and other areas when off-road vehicle use causes "considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands."  *Id*. at § 2.  Such areas are to remain closed until the agency "determines that such

**MEMORANDUM DECISION AND ORDER - 4**

adverse effects have been eliminated and that measures have been implemented to prevent future recurrence." *Id.*

## 2.    The 2005 Travel Management Rule

Prior to 2005, the Forest Service implemented the two Executive Orders through regulations that allowed each Forest to use the land management planning process to decide upon the appropriate location and extent of off-road vehicle use.  Specifically:

> On National Forest system lands, the continuing land management planning process will be used to allow, restrict or prohibit use by specific vehicle types off roads. . . . If the analysis indicates that the use of one or more vehicle types off roads will cause considerable adverse effects on the resources or other forest visitors, use of the affected areas and trails by the vehicle type or types likely to cause such adverse effects will be restricted or prohibited until such time as the adverse effects can be eliminated as provided in 36 CFR part 261.

36 C.F.R. § 295.2 (repealed 2005).   Under the pre-2005 regulations, many National Forests managers kept their Forests generally open to motor vehicle use unless there was a pressing reason for closure.  This management approach was referred to as "open unless posted closed."  AR 000042.  Some types of vehicles were exempted from the regulations, including: fire, military, emergency or law enforcement vehicle for emergency purposes; combat or combat support vehicle for national defense purposes; registered motorboats; and vehicle use expressly authorized under a permit, lease, license, or contract.  36 C.F.R. § 295.2(4) (repealed 2005).[3]

In 2005, the Forest Service issued comprehensively revised rules, referred to collectively as the 2005 Travel Management Rule.  The Forest Service said that the new rule was needed

---

[3]  These exemptions mirrored the vehicles excluded from the definition of "off-road vehicle" in Executive Order 11644.  *See* Exec. Order 11644 § 2(3) *as amended by* Exec. Order 11989.

**MEMORANDUM DECISION AND ORDER - 5**

because of a number of new and changed considerations, including the fact that the condition of

the public lands was being negatively affected by an enormous increase in use from motorized

vehicles, and the technological advances made in off-road motor vehicles.  The Forest Service

highlighted the fact that from 1982 to 2000, the number of people participating in off-road

vehicle use increased more than 109%.  AR 000042, 002291.  Snowmobile use alone increased

by 125% during that same time frame.  AR 002291.  Then Forest Service Chief Dale Bosworth

said that unmanaged recreation, especially impacts from off-highway vehicles, was a key threat

to the nation's forests.  AR 001327, 000050.  Additionally, the increased capability and power of

off-highway vehicles, as well as new classes of vehicles such as all-terrain vehicles and sport

utility vehicles, contributed to increasing impacts on National Forest lands.  AR000048.

 In issuing the new travel management rule, the Forest Service sought to: (1) enhance

management of National Forest System lands, as well as opportunities for public enjoyment of

the National Forest System; (2) protect natural resource values subject to damage from

indiscriminate motor vehicle use; and (3) preserve areas of opportunity on each National Forest

for both nonmotorized and motorized travel and experiences.  AR 000048.  The new rule also

would provide for a uniform, consistent, and national set of guidelines to follow in the individual

forest's decision-making process for designating roads, trails and areas for off-highway vehicle

use.  AR 00171.

 Until the issuance of the 2005 Travel Management Rule, snowmobiles had been included

in the definition of off-road vehicle for purposes of the Executive Orders and Forest Service

**MEMORANDUM DECISION AND ORDER - 6**

regulations.  *See* Exec. Order 11644, 37 Fed. Reg. 2877 (Feb. 8, 1972);[4] AR 000049.[5]  This

continued in the initial work on the new 2005 Rule, as early on the Forest Service specifically

called for the new rule to be applied to "both summer and winter motorized travel."  AR

001189.[6]  Later on in the process, however, the focus of the rule switched to summer use only.

*See* AR003838.[7]  On July 6, 2004, the Forest Service's Office of Communication released a

National OHV [Off-Highway Vehicle] Policy which indicated the focus of the rule was directed

at "wheeled" Off-Highway Vehicle use.  *See* AR 000048-50.

### a.    The Proposed New Travel Management Rule

The proposed rule was published on July 15, 2004.  AR 000156-170.   Its release

included a statement that the Forest Service did not have a clear, consistent, internal policy

regarding motor vehicle use on National Forest System lands, and there was further mention of

the advances in motor vehicle technology since Executive Orders 11644 and 11989 were issued,

which allowed for more off-road travel.  AR 000157-58.  The proposed rule called for the Forest

Service to designate whether motor vehicle use would be allowed by vehicle class and time of

year.  In the section on "Background or Need for Rule," snowmobiles were included in the

definition of an off-highway vehicle.  AR 000156.

---

[4] President Nixon's Executive Order 11644 included snowmobiles in the preamble discussion of off-road recreational vehicles and defined "off-road vehicle" to include motorized vehicles that are capable of cross-country travel on or over snow and ice.

[5] The National OHV Policy Communication Plan's Background section released on July 6, 2004, defined an "off-highway vehicle" to include "snowmobiles."

[6] A June 30, 2003 Access and Travel Management document noted that the "Area of Designation" should include designations for summer and winter travel.

[7] A December 31, 2003 e-mail from Regional Forester Jack Troyer stated the focus of the new rule was on "summer use" and no longer "over-snow use."

**MEMORANDUM DECISION AND ORDER - 7**

However, in Subpart B of the proposed rule, snowmobiles were exempted from designations on where and when their use would be allowed.  AR 000168.  The Forest Service said that a snowmobile "traveling over snow results in different and less severe impacts to natural resource values than wheeled motor vehicles traveling over the ground . . . [and] it may be appropriate for snowmobiles to travel off route."  AR 000161.  Notwithstanding such a statement, and notwithstanding its decision to exempt snowmobiles from any type of vehicle class, geographic, or season of use designations, the Forest Service added Subpart C to the proposed rule, dealing only with snowmobiles, in which the Forest Service said it was "preserving the authority currently in part 295 to allow, restrict, or prohibit snowmobile use on a discretionary basis."  *Id*.  *See also* AR 000164.

> ### b.      The Final New Travel Management Rule

The final rule–the 2005 Travel Management Rule–was published in the Federal Register on November 9, 2005.  Its central requirement is that:

> *Motor vehicle use* on National Forest System roads, on National Forest System trails, and in areas on National Forest System lands *shall be designated by vehicle class and, if appropriate, by time of year* by the responsible official on administrative units or Ranger Districts of the National Forest System . . .

36 C.F.R. § 212.51(a); 70 Fed. Reg. 68289 (Nov. 9, 2005) (emphasis added).  Any motor vehicle use not in accordance with the designations is prohibited.  36 C.F.R. §§ 261.13, 261.14.

The final rule exempted the following vehicles and uses from being subject to designations:

**MEMORANDUM DECISION AND ORDER - 8**

> (1) Aircraft;
> (2) Watercraft;
> (3) Over-snow vehicles;[8]
> (4) Limited administrative use by the Forest Service;
> (5) Use of any fire, military, emergency or law enforcement vehicle for emergency purposes;
> (6) Authorized use of any combat or combat support vehicle for national defense purposes;
> (7) Law enforcement responses to violations of law, including pursuit; and
> (8) Motor vehicle use that is specifically authorized under a written authorization issued under Federal law or regulations.

36 C.F.R. § 212.51(a).[9]

"In designating [such lands]," for the vehicles not exempted, the rules require the responsible official to "consider effects on . . . natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses . . ., the need for maintenance and administration of roads, trails, and areas . . ., and the availability of resources for that maintenance and administration."  36 C.F.R. § 212.55(a).  Additionally, the responsible official shall consider, with the objective of minimizing:

> (1) damage to soil, watershed, vegetation, and other forest resources;
> (2) harassment of wildlife and significant disruption of wildlife habitats;
> (3) conflicts between motor vehicle use and existing or proposed recreational uses of National Forest System lands or neighboring Federal lands; and
> (4) conflicts among different classes of motor vehicle uses of National Forest System lands or neighboring Federal lands.

---

[8] This was a new term.  "Over-snow vehicles" were referred to as  "snowmobiles" in the proposed rule.

[9] The proposed rule noted that all but one of these exemptions, the exemption for snowmobiles (now OSVs), were also found in Exec. Order 11644, Exec. Order 11989 and 36 C.F.R. Pt. 295.  AR 000161.

**MEMORANDUM DECISION AND ORDER - 9**

*Id*. at § 212.55(b).

As with the proposed rule, notwithstanding the exclusion of over-snow vehicles from the designation requirements generally, the final rule contained the same Subpart C language purporting to allow a discretionary decision to regulate the use of such vehicles in a particular forest:

> Use by over-snow vehicles on National Forest System roads and National Forest System trails and in areas on National Forest System lands *may* be allowed, restricted, or prohibited.

36 C.F.R. § 212.81(a) (emphasis added).

The final rule makes clear that Executive Orders 11644 and 11989 "direct Federal agencies to ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users on those lands, and to minimize conflicts among the various uses of those lands." 70 Fed. Reg. 68264. The final rule reiterated the reasons for a new rule, including the growing popularity and capabilities of off-highway vehicles and the need for a national framework under which designations are made at the local level. *Id*. at 68265.

Finally, also included with the publication of the final rule were "Public Comments on Proposed Rule and Department Responses." *Id*. One comment objected to the rationale for exempting snowmobiles from designations under § 212.51, pointing to the conflicts between users and resource impacts associated with snowmobile use. *Id*. at 68273. The Forest Service responded that there are different management issues and environmental impacts presented by cross-country snowmobile use than cross-country use by other types of motor vehicles. *Id*. The Forest Service also said that even though snowmobiles were exempted from mandatory

**MEMORANDUM DECISION AND ORDER - 10**

designation, a manager's ability to allow, restrict, or prohibit snowmobile travel was retained, on a case-by-case basis at the forest level. *Id*.

Another comment requested either the removal of the snowmobile exemption or changes to make the exemption seasonal and/or limit it to specific dates or snow conditions. *Id*. at 68284. In its response, the Forest Service said that snowmobiles cause different impacts to natural resource values than motor vehicles traveling over the ground, and that snowmobiles do not create a permanent trail or have a direct impact on soil and ground vegetation. *Id*. Therefore, the Forest Service concluded that mandatory designations were not appropriate, but nonetheless indicated that it was reserving authority under then-part 295 to allow, restrict or prohibit use by over-snow vehicles, including snowmobiles, on a discretionary basis. *Id*.

## B.     WWA's Petition to Amend

In a prelude to this lawsuit, WWA and 89 other groups petitioned the Forest Service on August 27, 2010 to amend the 2005 Rule by removing Subpart C and including over-snow vehicles (OSVs) in the mandatory off-road vehicle planning process. AR 004133-294. These petitioners contended that Subpart C of the 2005 Rule violated Executive Order 11644, and was arbitrary and capricious in violation of the Administrative Procedure Act. *Id*.

The petitioners alleged that OSVs left many impacts on the environment, including air pollution, water pollution, harm to soil and vegetation, noise pollution, and disturbance to wildlife. AR 004149-53, 004212-44. The petitioners described concerns about public safety from OSV use, and conflicts between OSV use and non-motorized recreationists. AR 004154-61, 004245-94. The petitioners also alleged disparities between the range of opportunities for OSV use compared to the opportunities for non-motorized recreationists to enjoy quiet and

**MEMORANDUM DECISION AND ORDER - 11**

solitude in the absence of OSV use.  AR 004161.

The petitioners further argued that the OSV exemption does not comply with President Nixon's requirement, in Executive Order 11644, that OSV vehicles also require a designation of areas of use and non-use, just as with other off-road vehicles.  AR 004137-42.  Additionally, the petitioners reasoned that, even if there are different management issues and environmental impacts for OSVs than for other off-road vehicles, that fact does not justify exempting OSVs from off-road vehicle designations because significant impacts still exist to the environment and other recreationists from OSV use.  *Id.*  The petitioners also contended that the Forest Service's rationale for developing a new travel management rule with respect to off-road vehicles applies equally to OSVs.  AR 004142-46.

The Forest Service denied WWA's petition on March 25, 2011.  AR 004325.  First, the Forest Service stated Executive Order 11644 was unenforceable.  AR 004327.  Next, the Forest Service stated Executive Order 11644, if enforceable, only required the "promulgation of regulations providing for restrictions and prohibitions on motor vehicle use," but "does not require agencies to impose restrictions and prohibitions on motor vehicle use."  AR 004328-31.  Lastly, the Forest Service claimed its reasons for exempting OSVs from the 2005 Rule were adequate.  AR 004332-33.

## STANDARD OF REVIEW UPON MOTION FOR SUMMARY JUDGMENT

This is an administrative review proceeding.  The record is that of the administrative record before the agency.  Consequently, the parties seek to resolve this action as a matter of law on their respective cross-motions for summary judgment.

Plaintiffs challenge the 2005 Rule under the Administrative Procedure Act.  *See* 5 U.S.C.

**MEMORANDUM DECISION AND ORDER - 12**

§ 706.  Under the APA, the Court may overturn agency action only if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or if the agency acted in excess of its statutory jurisdiction or authority.  5 U.S.C. § 706(2)(A), (C).  The Court must reject an agency decision if it is based on an erroneous interpretation of law or entirely fails to consider an important aspect of the problem, or offers an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *See League of Wilderness Defenders v. Forest Serv.*, 549 F.3d 1211, 1215 (9th Cir. 2008) (citations omitted).

## ANALYSIS AND HOLDINGS

**A.      The Six Year Statute of Limitations Does Not Bar Plaintiff's Complaint**

Intervenors[10] challenge the timeliness of WWA's first claim for relief.[11]  Both of WWA's claims for relief are based upon 5 U.S.C. § 706(2).  In its first claim, WWA alleges that the 2005 Travel Management Rule, specifically 36 C.F.R. § 212.51(a)(3), is arbitrary, capricious, contrary to law, an abuse of discretion and violates Executive Order 11644 (as amended by Executive Order 11989).  Complaint, Dkt. 1, ¶¶ 77-81.

---

[10]  The bulk of Intervenors' motion addresses the statute of limitations issue.  They "join, adopt and incorporate by reference" the Forest Service's Motion for Cross-Summary Judgment and therefore piggyback the other arguments raised by the Forest Service.

[11]  WWA brings a second claim for relief that the Forest Service's denial of its August 27, 2010 Petition to Amend was arbitrary and capricious.  Compl. ¶¶ 82-85.  The Intervenors do not expressly challenge the timeliness of this claim.  Instead, they argue that by including this claim, WWA is attempting to "bootstrap" around the six-year statute of limitations.  As discussed in further detail below, the Court finds the holding of *Nw. Envtl. Advocates v. EPA*, 547 F.3d 1006 (9th Cir. 2003), to be controlling, and such an argument by Intervenors is unconvincing.

**MEMORANDUM DECISION AND ORDER - 13**

1.       **The Accrual of the Right to Challenge the 2005 Travel Management Rule**

As a general rule, a six-year statute of limitations prescribed in 28 U.S.C. § 2401(a) applies to action brought under the APA.  *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 713 (9th Cir. 1991).  In relevant part, it requires that: ". . . every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues . . ."  28 U.S.C. § 2401(a).

Intervenors argue that WWA's challenge to the 2005 Rule is a "procedural" challenge, that is, a facial challenge to an agency's conduct in enacting a final rule.  If that is so, the statute of limitations begins on the date the final rule is published in the Federal Register, in this case November 9, 2005.  *See Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990.)  Therefore, according to Intervenors, the filing date of this lawsuit – November 29, 2011 – came more than six years later, and is untimely.

WWA characterizes its claim as a "substantive," not "procedural," challenge because it argues that the 2005 Rule does not comply with the underlying law it purports to implement and argues that the Forest Service does not have the authority to exempt OSVs.  WWA says that its right to challenge the final rule did not accrue, and the statute of limitations did not begin to run, until the Forest Service applied the OSV exemption in the 2005 Rule by issuing travel management plans that excluded OSV use.

Analogous Ninth Circuit decisions support WWA.  A similar issue was considered in *Wind River Mining Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991), which looked at the 1979 decision by the Bureau of Land Management ("BLM") to designate certain federal lands in California as Wilderness Study Areas (WSAs).  Mining was forbidden in such study areas.  *Id*. at

**MEMORANDUM DECISION AND ORDER - 14**

711.  In both 1986 and 1987, Wind River Mining Corporation ("Wind River") asked the BLM to declare that the WSA decision was invalid.  *Id*.  The BLM denied the request, and the Interior Board of Land Appeals dismissed Wind River's administrative appeal as untimely in 1987.  Wind River filed suit in 1989, claiming that the WSA decision was *ultra vires*.  *Id*. at 712.

The Ninth Circuit held that Wind River's legal challenge was substantive in nature, and the statute of limitations began to run with the Board of Land Appeals' final action of dismissing the appeal:

> [A] substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application to the specific challenger . . . The right to bring a civil suit challenging an agency action accrues "upon the completion of the administrative proceedings."  The BLM finally rejected Wind River's attempts to have WSA 243 declared invalid in 1987.  Wind River's complaint for review was filed less than twenty-nine months later, and therefore was timely.

*Id*. at 716 (citations omitted).  *See also Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 150-53 (D.C. Cir. 1990) (reaffirming long-standing rule that a claim alleging that an agency action violates an applicable statute may be raised outside a statutory limitations period by filing a petition for amendment or rescission of the agency's regulations and then challenging the denial of that petition).

More recently, a challenge was raised to a 1973 regulation promulgated by the Environmental Protection Agency (EPA) under the Clean Water Act (CWA).  *Nw. Envtl. Advocates v. EPA*, 2005 WL 756614, *7 (N.D. Cal. Mar. 30, 2005)  (*Nw. Envtl. Advocates I*).  In January 1999, plaintiff petitioned the EPA to repeal the regulation as *ultra vires*, contending that it was not authorized by the CWA.  *Id*. at *2.   On September 9, 2003, the EPA denied the plaintiff's petition.  *Id*.  Plaintiff filed suit against the EPA in December 2003, alleging first, that

**MEMORANDUM DECISION AND ORDER - 15**

the regulation was not authorized by the CWA, and, second, that the 2003 EPA Decision on the

Petition was "not in accordance in law." *Id*.[12]

The parties disputed whether or not the case was an "as applied" challenge and the trial

court first addressed the statute of limitations issue. *Id*. at *8. The court ruled that the EPA

could not deny plaintiffs' petition without also applying the regulation, and held that the

plaintiff's "as applied" challenge "may be raised outside a statutory limitation period, by filing a

petition for amendment or rescission of the agency's regulations." *Id*. (quoting *Pub. Citizen*, 901

F.2d at 152).

Affirming on appeal, the Ninth Circuit found the case indistinguishable from *Wind River*,

and concluded that the EPA's 2003 denial of the petition was an "'adverse application' of the

[regulation] within the meaning of *Wind River*." *Nw. Envtl. Advocates v. EPA*, 537 F.3d 1006,

1019 (9th Cir. 2005)  (*Nw. Envtl. Advocates II*) (quoting *Wind River*, 946 F.2d at 714-16).  The

date of the EPA's denial triggered the statute of limitations under § 2401(a), and the lawsuit was

timely filed.  *Id*.  *See also Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893 (9th Cir. 2012)

(citing to *Nw. Envtl. Advocates v. EPA*, 537 F.3d 1006, 1018-19 (9th Cir. 2008) and *Wind River*

*Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)).

The facts of WWA's challenge to the 2005 Rule bring the filing of the Complaint in this

case squarely into the holdings of *Wind River* and *Nw. Envtl. Advocates I and II*.  The 2005 Rule

(36 C.F.R. Pt. 212), was published in the Federal Register on November 9, 2005.  WWA filed a

---

[12]  WWA's second claim for relief similarly alleges that the Forest Service's denial of its August 27, 2010 petition to amend was arbitrary, capricious, an abuse of discretion and contrary to Executive Order 11644.  Compl. ¶¶ 82-85.  There is no statute of limitations challenge to this second claim.

**MEMORANDUM DECISION AND ORDER - 16**

Petition to Amend on August 27, 2010. That petition was denied on March 25, 2011. WWA's first claim for relief in its Complaint alleges that the 2005 Rule violates Executive Order 11644 (as amended by Executive Order 11989), and the decision to issue the 2005 Rule was arbitrary, capricious, and an abuse of discretion. The fact that this case involves an Executive Order, and not a statute, is of no significance. The 2005 Rule purports to both implement and draw its authority from the two Executive Orders. Accordingly, the Court holds that the six-year statute of limitations began to run when the Petition to Amend was denied on March 25, 2011 and therefore, WWA's Complaint was timely filed on November 29, 2011.[13]

## B.     The OSV Exemption Violates Executive Order 11644

The substantive issue raised by WWA is whether the OSV exemption found in the 2005 Rule violates Executive Order 11644. The entire factual background provided at the outset of this decision gives the full sense of how the 2005 Rule came to be, but the issue here can be decided in a relatively discrete factual setting, focused upon the plain language of the Executive Order and whether or not the 2005 Rule runs afoul of that language.

The interpretation of an Executive Order, as with the interpretation of a statute, begins with its text. *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005). In turn, the text must be

---

[13]  Both parties only briefly address the case of *Nw. Envtl. Advocates II*. In a footnote on page 8 of their opening brief (Dkt. 50), Intervenors claim that the *Nw. Envtl. Advocates II* holding cannot be reconciled with *Wind River*, among other cases not discussed above. This Court must follow controlling Ninth Circuit case law. Here, that includes *Nw. Envtl. Advocates II*. The Ninth Circuit panel did not ignore the cases cited by Intervenors when it reached its conclusion in *Nw. Envtl. Advocates II*. Instead, the court discusses *Wind River* and expressly states that it is indistinguishable. 537 F.3d at 1119. Additionally, the trial court stated that its holding was consistent with *Wind River* as well as other circuit court decisions. *See Nw. Envtl. Advocates I*, 2005 WL 756614 at *8  (citing to *Legal Envtl. Assistance Found., Inc. v. EPA*, 118 F.3d 1467, 1473 (11th Cir. 1997); *Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990); *Advance Transp. Co. v. United States*, 884 F.2d 303, 305 (7th Cir. 1989)).

**MEMORANDUM DECISION AND ORDER - 17**

construed consistently with the Order's "object and policy."  *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996) (quoting *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 389 (9th Cir. 1994)) (internal quotation marks omitted).

Executive Order 11644 was implemented to "further the purpose and policy of the National Environmental Policy Act" and to "establish policies and provide for procedures that will ensure that the use of off-road vehicles on public lands will be controlled and directed . . ." *Id*., Preamble, § 1.  *See also Gardner v. United States Bureau of Land Mgmt.*, 633 F. Supp. 2d 1212, 1217 (D. Or. 2009) (Executive Order 11644 was implemented to "establish criteria by which federal agencies were to develop regulations and administrative instructions for the designation of areas and trails on which [off-road vehicles] would be permitted.")

Section 3 of Executive Order 11644 requires that each agency head "shall develop and issue regulations . . . to provide for the administrative designation of the specific areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted . . ."  Exec. Order 11644, § 3(a).  The agency head shall also "set a date by which such designations of all public lands shall be completed."  *Id*. Further, such designations must be based upon (1) the protection of the resources of public lands, (2) the promotion of the safety of all users of those lands, and (3) minimization of conflicts among the various uses of those lands.  *Id*.

Hence, the object and policy of Executive Order 11644 are readily summarized: *protect* the public lands resource; *promote* the safety of users of those lands; and, *minimize* conflicts between the users.  Those policy objectives are spelled out in the Order.  The text of the Executive Order must be interpreted in a manner consistent with the policy objectives.  That task

**MEMORANDUM DECISION AND ORDER - 18**

is not a difficult one.  The Forest Service, along with other federal land management agencies,

"shall develop and issue regulations" designating areas and trails of the public lands which are

open to off-road vehicle use and areas which are closed to off-road vehicle use.

The Forest Service has met this requirement for other types of off-road vehicles (without

trying to argue that it is not required to do so), but then contends in a sideways twist of logic that

it is not required to issue such regulations as to over-snow vehicles ("OSVs").  As described

earlier in this decision, in exempting OSVs[14] under Subpart B of the proposed rule, the Forest

Service said that an OSV "traveling over snow results in different and less severe impacts to

natural resource values than wheeled motor vehicles traveling over the ground . . . [and] it may

be appropriate for [OSVs] to travel off route."  AR 000161.   By making this statement, the

Forest Service began its evaluation of OSVs and their impact upon the public land resources, and

considered to some degree a comparison of the impacts of OSVs with other types of off-road

vehicles.  But that is where the Forest Service stopped work.  Then, instead of completing the

task of the Executive Orders, the Forest Service added Subpart C of the proposed rule (OSVs

having already been specifically administratively "exempted" from the rule), purportedly

allowing itself to decide at some later date whether or not it would complete the assignment of

designating the lands for OSV-use, by "preserving the authority currently in part 295 to allow,

restrict, or prohibit [OSV] use on a discretionary basis."[15]  *Id*., AR 000164.

The flaw in the Forest Service's decision to exempt OSVs, while "preserving the

_____

[14]  The Court uses the word "OSV" here as that is the term used in the final rule.
However, in the proposed rule, the term "snowmobile" was used.  For consistency, the Court will
use over-snow vehicle or OSV.

[15]  This argument is further analyzed in the Court's discussion of the Petition to Amend.

**MEMORANDUM DECISION AND ORDER - 19**

authority . . . to allow, restrict, or prohibit [OSV] use on a discretionary basis," is that the decision conflates what is *required* of the Forest Service with what is *discretionary*.  *See* AR000164.  The Forest Service has the discretion to decide where and when OSV use can occur upon the public lands, but the Forest Service is *required* by Executive Order 11644 to make that decision.  There is no language in the Executive Order for the affected agencies to consider whether some types of off-road vehicles have "different and less severe impacts to natural resource values" than other types of off-road vehicles, in deciding whether to implement the Executive Order's requirement for "administrative designation" of areas and trails.  There is no space for the Forest Service to duck the issue by contending that it will "reserve" its authority.  It has the authority to exercise its discretion to decide the contours of its decision.  It has no authority to avoid making the decision.  Further, there is no authority for the Forest Service to delay the making of such designations for OSVs, under the guise of "preserving the authority" to do so at some future date.  The Executive Order provides that the agency heads "shall develop and issue regulations and administrative instructions, within six months . . ." and "set a date by which such designation of all public lands shall all be completed . . ."  Exec. Order. 11644, § 3.

The Executive Order flatly requires the Forest Service to "ensure" that off-road vehicle use "will be controlled and directed[.]"  Exec. Order. 11644, § 1.  The Forest Service lands must be evaluated and designated.  While the actual designations of use and non-use may occur at the individual forest level, the Executive Order requires the Forest Service to ensure that *all* forest lands are designated for *all* off-road vehicles.  The 2005 Rule fails to do this with respect to OSVs, and therefore fails to comply with Executive Order 11644.

Consistent with this Court's holding is *National Wildlife Federation  v. Morton* ("*Nat'l*

**MEMORANDUM DECISION AND ORDER - 20**

*Wildlife Fed.*"), which looked at BLM regulations designating as open to off-road vehicle use "all land not otherwise restricted or closed."  393 F. Supp. 1286, 1292 (D.C. Cir. 1975).  The court found that such regulations violated Executive Order 11644 because the BLM did not consider the requisite criteria set out in Section 3(a), upon which such designations were to be based.  *Id.*  "The Executive Order requires that all designations be based upon criteria set forth therein and the criteria are to be applied to designations of *both* use and non-use of [off-road vehicles]."  *Id.* (emphasis added).  The BLM's purported "[self-] grant of discretionary authority fail[ed] to ensure that *all public lands will be evaluated and designated* in accordance with Section 3(a) of the [Executive] Order."  *Id.* at 1294 (emphasis added).

The Forest Service attempts to distinguish *Nat'l Wildlife Fed.* by asserting that Subpart C, unlike the at-issue BLM regulations, does not "authorize a blanket designation of . . . lands as open."  *See* Forest Service's Motion, Dkt. 42, p. 9.  This argument is unpersuasive.  In *Nat'l Wildlife Fed.*, the BLM did half of what it was required to do - that is, the BLM designated land as open or closed, but did not consider the Section 3(a) criteria in doing so.  In enacting Subpart C, the Forest Service fails to do either for OSVs – there is no designation, nor consideration of the minimization criteria.  The takeaway from *Nat'l Wildlife Fed.* is that designations *must* be made and they *must* be based on the Section 3(a) criteria, the latter being the BLM's failing in *Nat'l Wildlife Fed*.

The Forest Service is also misguided in its contention that it has met the requirements of Executive Order 11644 *if* the Forest Service decides at some later time to propose restrictions or prohibitions on OSV use, and at that time ponders the same criteria considered for wheeled motor vehicle use.  By making this argument, the Forest Service implicitly admits that it has not

**MEMORANDUM DECISION AND ORDER - 21**

called for, set a date for completion, or done the assessments and designations the Executive

Order requires.  There has been no consideration of the Section 3(a) criteria set forth in the

Executive Order.  There has been no measuring of the policy objectives of the Executive Order.[16]

The Forest Service cannot avoid the responsibility of making the necessary designations

by saying that OSVs are different from wheeled off-road vehicles.  Over-snow vehicles, and

snowmobiles specifically, are included within the definition of an off-road vehicle in the

Executive Order.  Yet, the 2005 Rule's Subpart C states that OSVs *may be* allowed, restricted or

prohibited.  36 C.F.R. § 212.81.  This grants discretion to the responsible official to designate

Forest Service lands but does not *require* that such designation occur, contrary to the plain, and

mandatory, language of Executive Order 11644.

Accordingly, the Court finds that the 2005 Travel Management Rule is arbitrary and

capricious to the extent that it does not require designations for the use of OSVs upon the

national forest lands, as contrary to the plain language requirements of Executive Order 11644,

as amended by Executive Order 11989.

The Court need not reach WWA's alternative argument that the rationale given for

---

[16] The Forest Service seeks to buttress its litigation position in this case by pointing out that OSVs are not used in some forests, because snow is never or only rarely seen in such forests. The Forest Service also emphasizes that some forests with OSV use (including all of Idaho's forests) have already implemented restrictions on OSV use.  However, such arguments are no more than rationalizations for the Forest Service's failure to meet its primary duty in regard to OSVs.  The fact that the warmer climates of some of the nation's forests make OSV use an imaginary circumstance simply means that those forests will have an easy time of making any administrative OSV designations required by Exec. Order 11644.  Similarly, the fact that some forests already are regulating OSV use does not excuse the Forest Service from the its primary responsibility under Exec. Order 11644 to require such designations.  Instead, the fact that some forests already regulate OSV use simply highlights the need for designation of OSVs, along with other off-road vehicles, which is the directive and the policy of Exec. Order 11644.

**MEMORANDUM DECISION AND ORDER - 22**

exempting OSVs is also arbitrary and capricious.

**C.     Denial of WWA's Petition to Amend Violates Executive Order 11644**

WWA contends the Forest Service's denial of its petition to amend the 2005 Rule was arbitrary and capricious because it contradicted the purpose and intent of Executive Order 11644 and the rationale behind the denial was not supported by the evidence.  The Forest Service's "Response to Rulemaking Petition" stated that the Forest Service *may*, but is not required to, establish a system of routes and areas designated for OSV use.  AR 004328.   Instead, it contended that the Executive Order only required *promulgation* of regulations providing for restrictions and prohibitions on motor vehicle use but does not require agencies to *impose* restrictions and prohibitions on motor vehicle use.

As discussed above, the Court agrees with WWA that Executive Order 11644 requires an agency to promulgate regulations for the designation of all public lands for off-road vehicle use which, by specific reference in the Order, includes OSVs.  The Forest Service's interpretation that Executive Order 11644 *allows*, but does not *require*, designations to be made is wrong as a matter of law. The Executive Order states that each agency *shall* develop regulations that will provide for administrative designations for areas of use and areas of non use.  Exec. Order 11644, § 3.  Further, the purpose of the Executive Order is to "establish policies and provide for procedures that *will ensure* that the use of off-road vehicles on public lands *will* be controlled and directed . . ."  § 1 (emphasis added).  The language in the Executive Order makes designation of lands, including for the use of OSVs, mandatory, not discretionary.

The essence of the Forest Service argument in this regard is that Executive Order 11644 only required the Forest Service to promulgate a regulation stating that it has the authority to

**MEMORANDUM DECISION AND ORDER - 23**

later promulgate a regulation designating the nature of OSV use on the public lands. The fallacy

of the argument is that such a regulation simply restates what Executive Order 11644 allows –

authority of the federal lands agencies to designate the nature of OSV use on the public lands –

and does not go on to include the requirement of Executive Order 11644 that the federal land

agencies, including the Forest Service, actually perform the designations.

In its denial of the Petition, the Forest Service interpreted Section 9(b) of Executive

Order 11989 (which amended Executive Order 11644 in 1977) as supporting its position that the

decision as to whether or not to designate the parameters of use of OSVs upon the forest lands

was discretionary. Section 9(b) allows agency heads to adopt the policy "that portions of the

public lands . . . shall be closed to use by off-road vehicles except those areas or trails which are

suitable and specifically designated as open," otherwise known as the "closed unless open"

approach. The Forest Service advances the argument that if section 3(a) required a designated

system, section 9(b) would be unnecessary. The Court disagrees, and finds that although section

9(b) allows an agency to adopt a "closed unless open" system of designating public lands, it does

not allow for the converse, nor does it in any way allow for a strained reading of the otherwise

plain language requiring the Forest Service to complete a designation process for all off-road

vehicles.

Lastly, the Forest Service justified its decision to deny the Petition by its position that the

OSV exemption merely continues what the previous travel management rule, formerly codified

at 36 C.F.R. part 295, required. Part 295 required that:

> On National Forest System lands, the continuing land management
> planning process *will* be used to allow, restrict, or prohibit use by
> specific vehicle types off roads . . . Off-road vehicle management
> plans *shall* provide vehicle management direction aimed at

**MEMORANDUM DECISION AND ORDER - 24**

> resource protection, public safety of all users, minimizing conflicts
> among users, and provide for diverse use and benefits of the
> National Forests.

36 C.F.R. part 295 (repealed) (emphasis added).  Part 295 imposed the land management

planning process to be used by the Forest Service in either allowing, restricting or prohibiting

off-road vehicle use on National Forest System lands.  There is no hidden alchemy in the

language of Part 295 that would allow the Forest Service to change the mandatory requirement

of designation contained in Executive Order 11644 into a discretionary decision as to whether

such designation was necessary at all.  To the contrary, Section 295.2 provides that the land

management planning process "will" be used for designating lands.  This is in direct contrast to

the language of the 2005 Rule's Subpart C, specifically § 212.81(a), which states that use by

OSVs on National Forest System lands "*may* be allowed, restricted, or prohibited."  36 C.F.R.

§ 212.81(a).  Subpart C purports to allow discretion, where no discretion exists.  The prior rule,

part 295, did not allow discretion as to whether designation ought to occur.

As with this Court's decision with respect to WWA's first claim for relief, the Court

finds that the Forest Service's denial of WWA's Petition to Amend was contrary to Executive

Order 11644.  The Forest Service claims it is has complied with Executive Order 11644 in its

issuance of the 2005 Travel Management Rule, specifically the OSV exemption.  The Court

disagrees.  While there is to be great deference given to an agency's interpretation of Executive

Orders applicable to that agency, the agency's interpretation must be reasonable.  *Kester v.*

*Campbell*, 652 F.2d 13, 15-16 (9th Cir. 1981).  An agency's interpretation is unreasonable if it is

plainly erroneous or inconsistent with the executive order.  *Id.* at 16 (internal citations omitted).

The Court finds the Forest Service's interpretation is *not* consistent with the language of the

**MEMORANDUM DECISION AND ORDER - 25**

Executive Order, as fully detailed in the previous section, and therefore, is unreasonable.

## CONCLUSION AND REMEDY

The Court's role is constrained in the administrative review process, consistent with the different spheres of the courts and federal agencies in the separate branches of federal governmental power.  The Court will defer to agency action that reflects a reasonable application of the law.  But where an agency has fallen short of its obligations to meet the requirements of law, there is no place for judicial deference.  Such is the case here with regard to the Forest Service's 2005 Travel Management Rule's OSV exemption.

In sum, the Court finds the OSV exemption is contrary to law, specifically Executive Order 11644, as amended by Executive Order 11989, because Executive Order 11644 requires an agency to promulgate regulations that provide for designation of areas of use and non-use by off-road vehicles, *including* over-snow vehicles, on all public lands.  By exempting OSVs from the 2005 Rule and purporting to make discretionary the threshold question of whether to designate the areas of use or non-use by OSVs, the Forest Service has not reasonably applied Executive Order 11644 in its promulgation of the 2005 Rule, or in its denial of WWA's Petition to Amend.

The Court finds that the OSV Exemption in the 2005 Travel Management Rule, codified at 36 C.F.R. § 212.51(a)(3), and Subpart C, 36 C.F.R. § 212.81, is contrary to the Executive Order.  Accordingly, the Court hereby orders that the Forest Service issue a new rule consistent with Executive Order 11644, as set out in this decision, within 180 days of the date of the entry of Judgment in this case.

**MEMORANDUM DECISION AND ORDER - 26**

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED:

1)      Plaintiff Winter Wildlands Alliance's Motion for Summary Judgment (Dkt. 40) is

GRANTED;

2)      Defendant U.S. Forest Service's Cross-Motion for Summary Judgment (Dkt. 43)

is DENIED; and

3)      Intervenors Idaho State Snowmobile Association, Inc., American

Council of Snowmobile Associations, Inc. and BlueRider Coalition's Cross-Motion for

Summary Judgment (Dkt. 48) is DENIED.



DATED:  **March 29, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 27**